Nov. Term,
1852.

The Terre
Haute Draw-
bridge Com-
pany
v.
Halliday.

---

The Terre-Haute Drawbridge Company v. Halliday and Another.

Action by the owners of a steamboat against the *Terre-Haute Drawbridge Company* to recover damages occasioned by the wrongful detention of the plaintiffs' boat by an obstruction created by the defendants' bridge. On error it was maintained that the plaintiffs should have been required to prove, in order to maintain their action, that the boat was licensed under the act of Congress of 1838. *Held*, that, supposing it was necessary that the boat should have been licensed, the license was to be presumed in the absence of evidence to the contrary.

The charter of the *Terre-Haute Drawbridge Company* does not authorize the company to create any obstruction to the navigation of the *Wabash* river in constructing their bridge.

By an obstruction is meant such an impediment to the navigation that boats in passing along the stream could not by the use of skill and care avoid being injured.

Saturday,
January 1,
1853.

APPEAL from the *Sullivan* Circuit Court.

Smith, J.—This was an action on the case brought by

Nov. Term,
1852.

THE TERRE
HAUTE DRAW-
BRIDGE COM-
PANY
v.
HALLIDAY.

the appellees against the appellant. The declaration contains five counts. The first three are for damages occasioned by the detention of a steamboat, by reason of an obstruction of the river occasioned by the carelessness and negligence of the defendant in constructing a bridge over the *Wabash* river, and in not opening the draw so as to permit the plaintiffs' boat to pass.

The fourth count alleges that the plaintiffs were the owners of a certain flat-boat loaded with pork, wheat, corn, &c., of the value of 5,000 dollars, and that in passing said obstruction, unlawfully and wrongfully placed by the defendant across said river, said boat was unavoidably cast upon one of the bents of the bridge and was sunk.

The fifth count is similar to the fourth, except that it alleges that the loss of the flat-boat was occasioned by the negligence of the defendant in suffering and permitting the usual and ordinary passage of flat-boats navigating the river between the bents or piers of the bridge, to be obstructed by a sunken flat-boat belonging to the defendant, and by drift-wood negligently permitted to remain lodged, whereby the passage of the plaintiffs' boat through said ordinary passage was impracticable, and the plaintiffs were compelled to attempt another passage between the bents or piers of the bridge, the same being unusual and hazardous, whereby their said boat was lost, &c.

The defendant pleaded not guilty, and there was an agreement that all matters of defence which could be specially pleaded should be given in evidence under that issue.

The cause was tried by a jury, who found a verdict for the plaintiffs and assessed their damages at 3,750 dollars, for which sum judgment was rendered, a motion for a new trial having been overruled. The evidence is set out in a bill of exceptions.

The plaintiffs proved that their steamboat, the " *William H. Day*," was detained at the bridge in question, in consequence of the draw being incomplete and insufficient to permit her to pass, for several days on several different

Nov. Term,
1852.

THE TERRE
HAUTE DRAW-
BRIDGE COM-
PANY
v.
HALLIDAY.

occasions, and that they had thereby incurred a considerable loss. They also introduced evidence to prove that, on one of these occasions, the boat arrived at the bridge on the 2d of *January*, and was detained three days, and that, in consequence of this detention, the boat afterwards, on her return trip, having proceeded, after passing the bridge, to *Lafayette*, and intending to return from thence to the mouth of the *Wabash* river, was frozen up in the ice and detained thirty-two days, whereas, had it not been for the previous detention at the bridge, she could have made her passage to the place of her destination before the navigation of the *Wabash* was interrupted by ice.

The evidence relative to the flat-boat was, that the plaintiffs loaded a boat at *Logansport* with five thousand five hundred bushels of oats, worth 55 to 60 cents per bushel; four hundred and fifty-five bushels of wheat, worth 75 to 100 cents per bushel; and that the boat was worth 500 dollars. The boat was navigated by a captain and six bow-hands. The passage was favorable until the boat arrived at *Terre-Haute*, where, when intending to pass through one of the spans of the bridge, the boatmen discovered, or thought they discovered, a log some forty or fifty feet long, lodged against the pier and obstructing the passage. As soon as they discovered this obstruction, they endeavored to pass through another span, but, in this attempt, the boat was cast against the pier and stove by the force of the current.

The evidence as to the degree of skill with which the boat was managed is contradictory. It was stated by several witnesses who saw the boat approaching, that it was injudiciously managed; that it approached the pier quartering, whereas, if it had been straightened, it would have passed without difficulty. But the hands on the boat testified that they were forced into this position by the wind and current, in endeavoring to avoid the obstructions resting against the piers and preventing them from passing through the ordinary channel.

Some witnesses for the defendant stated that a great many boats passed the bridge safely on the day the plain-

tiffs' boat was stove; that it was easy for a competent
pilot to pass safely; that the crew of the boat seemed to
be confused and were pulling different ways; that the
obstructions resting against the pier consisted of a tree
about twenty-five or thirty feet long and six inches in
diameter, with a brush top, and a saw-log ten or twelve
feet long; and that a little while after the plaintiffs' boat
struck, another boat came along and knocked them away,
without sustaining any injury.

The defendant proved that the bridge was built pursuant to a contract, by *Madison* and *Hall*, and an attempt
was made to show that the *Drawbridge Company* was not
responsible for the damages sustained by the plaintiffs,
because, at the time those damages were sustained, the
bridge was still in the hands of the contractors. The
company had, however, appointed a toll-collector who
commenced taking tolls for said company before the
losses of the plaintiffs had occurred.

The bridge has six spans or spaces between the piers.
The first, next the western shore, is fifty feet wide. The
three next are each one hundred feet wide. The two
next the eastern shore, at one of which there is a draw,
are each about fifty feet wide. Flat-boats usually passed
through the three widest spans.

At the time the plaintiffs' boat was sunk, there was a
flat-boat which had sunk shortly before, lying against the
second pier from the western shore, and extending nearly
equally, according to its length, which was about seventy-
five feet, across the two first widest spans. This boat
was connected by a cable with the western shore.

The tree and saw-log were resting against the second
pier from the eastern shore, in the same manner. It was
stated by some witnesses that they presented no real obstruction to the passage of a boat, though as they were
partially sunk, and there was a ripple running over them,
they might have presented an appearance of danger to
persons on an approaching boat.

Upon the evidence being concluded, the Court gave
several instructions to the jury, and refused to give some

instructions which the defendant requested should be given.

One of the errors assigned is, that to sustain their action for damages occasioned by the detention of the steamboat, the plaintiffs should have been required to prove that the boat was licensed under the act of Congress of 1838.

Supposing, however, that it was necessary the boat should have been licensed to enable the owners to recover for her detention, we think such license is to be presumed in the absence of evidence to the contrary. We know of no instance where persons who are required by statute to take out licenses for the privilege of carrying on particular kinds of business, are required to aver they had such license to enable them to maintain suits for breaches of contract, or for damages sustained by the wrongful conduct of others in reference to such business. It is a rule of law that every one is presumed to have acquitted himself of his engagements and duty, and to have complied with the requirements of a positive law. See Cow. & Hill's Notes to Phil. on Ev. pp. 296 to 299, where numerous cases are cited. The case of *Sissons* v. *Dixon*, is analogous to the one before us. The plaintiff, at *Dublin*, delivered a parcel of goods to the defendant, who was a common carrier, to be forwarded to *Liverpool*. The law required the goods to be duly entered at the custom house, without which entry the importation was illegal. The action was case for the loss of the goods, and it was contended that the plaintiff should have proved that such entry was made; but it was held that the presumption was that the plaintiff had complied with the law, and as no proof was given that the goods were not duly entered, that ground of defence failed. 5 Barn. & Cress. 758.

. . The Court instructed the jury that under the ordinance of 1787, the act of Congress to enable *Indiana* to form a state constitution, and the state constitution, the state has no power to obstruct the navigation of any navigable stream within the state, nor to authorize any person to do so; and that the state has not done or attempted to do

so by the act authorizing the construction of the bridge

in question, it being a condition implied at least, if not expressed, that the corporation, in building the bridge, should create no obstruction to the navigation of the river.

We think this instruction, qualified as it was by several subsequent instructions, cannot be objected to, as, whether the ordinance of 1787 is now in force or not, the charter does not authorize the corporation to create any obstruction to the navigation of the river, in constructing their bridge. It does not, however, follow, that any pier or other necessary work placed in the bed of a river to support a bridge, against which a boat might run and be damaged, would be such an obstruction as is here contemplated. By an obstruction we mean such an impediment to the navigation that boats in passing along the stream could not, by the use of skill and care, avoid being injured; and the jury were very clearly informed that this was the sense in which the term was used in the instructions given. They were told that to entitle the plaintiffs to recover, the latter must show that they had made use of ordinary skill and care to prevent being injured, and, at the request of the defendant, an instruction was given, that if a skillful and careful pilot could have steered the flat-boat under the bridge safely and without injury, and the same was lost through negligence, carelessness, and unskillfulness, the jury should find for the defendant.

It is probably sufficiently clear from the evidence that the piers of the bridge ought not of themselves to be considered an obstruction to the navigation, but the relevancy of these instructions is supported by the evidence relative to the logs which had drifted against one of the piers, and to the sunken flat-boat.

It is manifest from the evidence and the amount of the verdict, that the jury found that the bridge, with the drift logs and sunken boat, did create such an obstruction as to render the defendant liable for the damages occasioned by the loss of the plaintiffs' flat-boat, and as that was a question for the determination of the jury, and the in-

structions relative to it are not objectionable, we cannot say the finding as to this point was wrong.

The Court refused to give an instruction, requested by the defendant, to the effect that the plaintiffs could not recover damages for the detention of their steamboat in the ice, after passing the bridge, and before getting out of the *Wabash* river. We think it sufficiently appears, however, that the jury did not estimate any damages for that detention.

The jury, in estimating the damages, appear to have confined themselves wholly, or almost wholly, to the loss sustained by the sinking of the flat-boat. That boat, with the oats and wheat, were worth, at the lowest prices stated, 3866 dollars, and the proceeds of the sale of the whole, after the boat was sunk, deducting the expenses, amounted to 120 dollars, leaving the loss 3,746 dollars. This amount of loss is within 4 dollars of the amount of the verdict, and as the plaintiffs, if they were entitled to recover any thing for the destruction of this boat, were entitled to the damages they had actually sustained by its loss, we think we are not at liberty to disturb the judgment; though if damages had been given for the detention of the steamboat in the ice, or it did not clearly appear that damages were not given for that detention, we are inclined to think that the judgment must have been reversed for the refusal of the Court to give the instruction relative to the measure of damages which was requested by the defendant.

*Per Curiam.*—The judgment is affirmed with 1 per cent. damages and costs.

*J. P. Usher*, for the appellant.

*G. S. Orth, A. M. Crane,* and *E. H. Brackett,* for the appellees.